Tommy Eugene Dotson v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-237-CR

TOMMY EUGENE DOTSON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  
Introduction 

Appellant Tommy Eugene Dotson appeals his conviction for manslaughter. A jury found Dotson guilty of recklessly causing the death of Lori Sitko, and the trial court sentenced him to forty years’ imprisonment and made an affirmative deadly weapon finding.  Dotson raises ten issues on appeal.  We will affirm.

II.  Factual and Procedural Background

On November 24, 2001, Dotson’s recreational vehicle (“RV”) was parked with its back end up against a building in a dirt lot located between the 3200 blocks of East Belknap and Race Street in Fort Worth, Texas.  At approximately 4:00 p.m., Lori Sitko and Jeffrey Adkins, two homeless individuals, were walking towards downtown on Belknap Street when Sitko picked up a stick and went to the dirt lot where Dotson’s RV was parked.  According to Adkins, Sitko began waiving the stick in the air, but did not appear angry or upset and had not reached the RV when Dotson turned on the engine and started moving towards her.  Dotson swerved slightly in Sitko’s direction, hitting Sitko and causing her to fall under the RV.  Without braking, Dotson then turned the RV’s wheels to the right, running over Sitko’s body with the driver’s side tires and proceeding to exit the parking lot.  Adkins testified that Dotson never stopped or hesitated once he made impact with Sitko’s body, “[h]e just kept running over her.”  Dotson then quickly fled the scene.  Sitko died as the result of injuries sustained from the collision.

A short time later, after receiving a description of the RV and the license plate number from witnesses, the police located Dotson’s RV parked behind a nearby bar.  Dotson was subsequently arrested and taken to John Peter Smith Hospital for a blood test, which revealed that Dotson’s blood alcohol content was over two-and-a-half times the legal limit.  Thereafter, during the course of investigating the incident involving Dotson and Sitko, the police discovered that Dotson and Sitko knew each other and that there was a history of violent behavior between the two of them.  The State charged Dotson with the offense of murder. 

At trial, Dotson never disputed that he struck and killed Sitko with his RV. But, he raised the defenses of self-defense and necessity, and the trial court charged the jury on both defensive theories.  In addition, the trial court charged the jury on the offense of murder as alleged in the indictment and the lesser included offense of manslaughter.  The jury ultimately found Dotson guilty of the offense of manslaughter.  During punishment, Dotson pled “true” to the repeat offender allegation in the indictment, and the trial court sentenced him to forty years’ imprisonment and made an affirmative deadly weapon finding. This appeal followed.

III.  Sufficiency of the Evidence

In his first two points, Dotson contends that the evidence is legally and factually insufficient to support his conviction for manslaughter because the evidence demonstrates that Dotson acted out of justified necessity and self-defense when he struck and killed Sitko with his R.V.
(footnote: 1)  The State, however, maintains that the evidence is both legally and factually sufficient to support the jury’s rejection of Dotson’s defensive theories and to sustain his conviction for manslaughter. 

A.  Standard of Review and Applicable Law

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

After the defendant has introduced some evidence of a defense, the State bears the burden of persuasion to disprove it.  
Zuliani v. State
, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); 
Saxton v. State
, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991).  This burden does not require the State to introduce evidence disproving the defense, rather it requires the State to prove its case beyond a reasonable doubt.  
Zuliani
, 97 S.W.3d at 594; 
Saxton
, 804 S.W.2d at 913.  To determine sufficiency of the evidence to disprove a nonaffirmative defense, the appellate court asks whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against appellant on the defensive issue beyond a reasonable doubt.  
Saxton,
 804 S.W.2d at 914.  

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, No. 539-02, 2004 WL 840786, at *4 (Tex. Crim. App. Apr. 21, 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
.
 at *7. There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 
 In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 
at *4; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder.  
Zuniga, 
2004 WL 840786, at *4.  A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at *7, 9.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

When a defendant challenges the factual sufficiency of the rejection of a defense, the reviewing court employs the same standard of review articulated in 
Zuniga
 because once the defendant has met his or her burden of production of evidence as to a defense, the State bears the burden to prove appellant’s guilt of the charged offense beyond a reasonable doubt.  
See Zuniga, 
2004 WL 840786, at *7;
 Zuliani
, 97 S.W.2d at 595. A guilty finding is an implicit rejection of the defense.  
Zuliani
, 97 S.W.3d at 594.

Under Texas law, a person commits the offense of manslaughter
 “if he recklessly causes the death of an individual.”  
Tex. Penal Code Ann.
 § 19.04(a) (Vernon 2003).  “A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.”  
Id
. § 6.03(c).  Culpable mental state is generally proven through circumstantial evidence.  
See Dillon v. State
, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978).  

Nonetheless, it is a defense to prosecution if the conduct in question is justified based on necessity.  
See
 
Tex. Penal Code Ann.
 §§ 9.02, 9.22.  Conduct is justified under the defense of necessity if (1) the defendant reasonably believed his or her conduct was immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.  
Id
. § 9.22.  The rationale of this defense is that “even though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude.”  
Arnwine v. State
, 20 S.W.3d 155, 159 (Tex. App.—Texarkana 2000, no pet.) (quoting 
Alford v. State
, 866 S.W.2d 619, 624 n.9 (Tex. Crim. App.1993)). Self-defense also serves as a justification excluding criminal responsibility for otherwise criminal behavior.  
Tex. Penal Code Ann.
 § 9.31.  Texas law provides that 

[a] person is justified in using deadly force against another:  

(1) if he would be justified in using force against the other under Section 9.31 [i.e., when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other’s use or attempted use of unlawful force]; 

(2) if a reasonable person in the actor’s situation would not have retreated; and 

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:  

(A) to protect himself against the other’s use or attempted use of unlawful deadly force; or 

(B) to prevent the other’s imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

Id
. § 9.32(a); 
see also id.
 § 9.31.

B.  
Legally and Factually Sufficient Evidence Exists to Support Jury’s Rejection of Dotson’s Defensive Theories and to Sustain His Conviction for Manslaughter

The evidence reflects that Dotson and Sitko knew each other because both individuals frequented the “Riverside area” of Fort Worth.  Dotson lived out of his RV, while Sitko slept on the street with other homeless individuals. Because Dotson suffered from a debilitating foot condition, he often used crutches to get around.  He also only wore one lens in his eyeglasses because he had a cloudy eye. 

A short time before Sitko’s death, Dotson became angry with Sitko over money and told several acquaintances that he was going to kill Sitko.  On the evening of November 22, 2001, both Dotson and Sitko went to the Vaquero Orlando bar.  According to Leonard Cullop, another homeless individual at the bar, Sitko walked passed Dotson that evening and picked up a twenty dollar bill that was laying on his table.  As Sitko walked away, Dotson stood up, approached Sitko, and punched her in the face, knocking her to the floor.  Cullop testified that Dotson was immediately escorted out of the bar, screaming “I’m going to kill the fucking bitch.”

The following day, Harvey Passwater, a friend of Sitko’s, noticed that Sitko had a bruised eye and asked where she had gotten the bruise.  When Passwater discovered that Dotson had struck Sitko in the face, he and Sitko went to Dotson’s RV to confront him.  Passwater testified that when he and Sitko got to Dotson’s RV, he entered the RV and punched Dotson in the face numerous times until Sitko convinced him to stop.  After Passwater and Sitko left the RV, Dotson called 911 to report the incident.  Rick Benson, a Fort Worth Police Officer, was dispatched to Dotson’s RV to investigate.  According to Officer Benson, Dotson’s glasses appeared “tilted and bent” and Dotson had a small amount of blood on one side of his face.  But, Officer Benson testified that he did not see injuries justifying more than a citation to Passwater. 

Less than twenty-four hours later, Dotson struck and killed Sitko with his RV.  Joel Luna witnessed most of the incident involving Dotson and Sitko while eating with his family at a Jack-In-The-Box across the street from the dirt lot. According to Luna, as he drove towards the Jack-In-The-Box, he noticed Sitko walking down the road and made a comment to his family about the boots that she was wearing.  After Luna and his family entered the Jack-In-The-Box and ordered food, they sat at a table next to a window facing towards the dirt lot where Dotson’s RV was parked.  A couple of minutes later, Luna’s son exclaimed, “Daddy, look.  They have just hit that lady, the one that was walking down the street.”  Luna immediately turned, looked out the window, and saw Sitko “bouncing back and forth” on the dirt underneath Dotson’s RV. According to Luna, Dotson then ran over Sitko with his rear tires and exited the dirt lot without ever stopping the vehicle.  After the RV pulled onto the street, Luna saw Dotson “turning around” as if he was “looking to see if somebody had seen what he just had done.”  When Dotson began driving away from the scene, Luna immediately told his wife to call the police, ran to his vehicle, and began following the RV.  During this time, Luna was never able to get directly beside the RV; however, he was able to see Dotson’s face in the driver’s side mirror and to write down the RV’s license plate number before returning to the scene.  After Dotson was apprehended, Luna positively identified Dotson as the person that ran over Sitko. 

Detective Ray Wangler, an accident reconstructionist for the Fort Worth Police Department, testified that the distance from Sitko’s body to the building that Dotson’s RV was parked in front of was sixty feet.
(footnote: 2)  Detective Wangler, however, could not determine the exact point of impact because there was no indication that Dotson ever attempted to brake or to stop the vehicle.  Detective Wangler testified that when he surveyed the lot where the collision occurred, there were no skid marks, scratches on the pavement, or any other marks in the parking lot that could be attributed to Dotson’s RV.  But, according to Detective Wangler, based on the location and the direction of Sitko’s body and the location of a purse that Sitko was carrying at the time of the collision, he believed that Dotson could have driven out of the parking lot without striking Sitko. 

As a result of the collision, Sitko suffered numerous abrasions, including “a gliding abrasion” on the left side of her body from sliding across a rough surface.  According to Gary Sisler, the medical examiner who examined Sitko, Sitko’s injuries indicated that she was hit above the center of gravity.  He testified that there was no indication that the vehicle attempted to stop because there were no injuries to Sitko’s lower extremities.  Sisler also testified that Sitko’s fatal injury was “an atlanto-occipital fracture dislocation,” resulting when the base of the skull separates from the first cervical vertebral body causing bruising to the spinal cord.  Sitko’s autopsy also revealed her blood alcohol level was approximately four times the legal limit at the time of her death.

Billy Walker, a fellow inmate of Dotson’s, testified that he and Dotson discussed the circumstances surrounding Sitko’s death and the potential charges against Dotson numerous times while in the Tarrant County Jail. According to Walker, Dotson told him that when he saw Sitko coming towards his RV with a stick, “he dropped it in low and gunned it,” and thereafter, “he could feel the vehicle run over [Sitko] with his dooleys.”  Dotson also told Walker that he ran over Sitko to prevent her from breaking his windshield because it had been broken in the past and had cost him $400 in repairs. Walker testified that Dotson indicated that he and Sitko had argued shortly before the incident because she had run off with his money.  During their conversations, Dotson never expressed to Walker that the incident involving Sitko was accidental or unintentional.  In fact, according to Walker, Dotson “acted nonchalant” about the incident and “acted like it was no big deal because [Sitko] was a homeless person.”  In addition, Walker testified that Dotson told him that he believed he would only be charged with manslaughter and that he would probably only receive a five-year sentence based on the incident because the only witnesses were other homeless individuals. 

On appeal, Dotson argues that he proved beyond a reasonable doubt that he acted out of justified necessity and self-defense in running over Sitko with his RV.  Despite Dotson’s argument, 
the trier of fact, as the exclusive judge of the weight and credibility of witnesses’ testimony, 
was free to accept or to reject all or part of the defensive evidence.  
See Saxton
, 804 S.W.3d at 914.  In the instant case, the jury obviously did not believe that Dotson was justified by either necessity or self-defense when he struck and killed Sitko with his RV. After examining all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of manslaughter 
beyond a reasonable doubt and also could have found against Dotson on both the necessity and self-defense issues beyond a reasonable doubt.  Furthermore, 
viewing all the evidence in a neutral light, favoring neither party, we also conclude that the evidence supporting the verdict, taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is 
not so strong that guilt cannot be proven beyond a reasonable doubt.  Accordingly, we hold that the evidence is both legally and factually sufficient to support the 
jury’s implicit rejection of Dotson’s defensive theories and to sustain his conviction for manslaughter. 
 We overrule Dotson’s first and second points.  

IV.
  
Billy Walker’s Testimony

In his third point, Dotson contends that the trial court abused its discretion by overruling his objections to Walker’s testimony because Walker deliberately elicited incriminating statements from Dotson as an agent of the State in violation of his Sixth Amendment right to counsel.  The State maintains that the admission of Walker’s testimony was proper because Walker did not act as a state agent during his conversations with Dotson.

At trial, shortly after the State commenced its examination of Walker, Dotson moved for a hearing outside the presence of the jury to determine whether Walker was “working with the police department in talking to [Dotson] in the jail after he was charged.”  After hearing evidence and argument regarding the admissibility of Walker’s testimony, the trial court overruled Dotson’s objections and permitted him to testify in front of the jury.
(footnote: 3)  But, in the court’s charge, the jury was instructed not to consider any evidence of statements Dotson made to Walker if the jury believed that Walker was acting as an agent for the State when talking to Dotson about his case. 

A.  Standard of Review and Applicable Law

In reviewing a Sixth Amendment right-to-counsel question, 
we employ the bifurcated standard of review set forth in 
Guzman v. State
.  955 S.W.2d 85, 89 (Tex. Crim. App. 1997); 
see also Manns v. State
, 122 S.W.3d 171, 178 (Tex. Crim. App. 2003) (applying bifurcated standard to right-to-counsel question).  Therefore, we afford almost total deference to a trial court’s determination of the historical facts and to its determination of mixed questions of law and fact that turn upon an evaluation of credibility and demeanor.
 
Guzman
, 955 S.W.2d at 89.  We review de novo mixed questions of law and fact that do not turn on credibility and demeanor.  
Id
.  When the trial court does not make findings of fact, we review the evidence in the light most favorable to the trial court’s ruling.  
Carmouche v. State
, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

It is well settled law that, after the initiation of formal criminal proceedings, the State cannot deliberately elicit incriminating statements from an accused without an express waiver of the right to counsel.  
Massiah v. United States
, 377 U.S. 201, 206, 84 S. Ct. 1199, 1203 (1964).  In order to find a Sixth Amendment violation under 
Massiah 
and its progeny, the challenged statements must have been (1) deliberately elicited (2) by a government agent.  
State v. Hernandez
, 842 S.W.2d 306, 312 (Tex. App.—San Antonio 1992, pet. ref’d), 
cert. denied
, 509 U.S. 927 (1993).  The determination of whether a jailhouse informant is acting as a state agent depends in large part upon whether the inmate is acting pursuant to an agreement with or instructions from government officials.  
See Manns
, 122 S.W.3d at 182.  A jailhouse informant who has not entered into any agreement with the government and who reports incriminating evidence out of conscience or even an “encouraged hope to curry favor” is not acting as a government agent.  
Hernandez
, 842 S.W.2d at 314.  

B.  Walker Was Not Acting as an Agent of the State During His Conversations with Dotson

Outside the presence of the jury, Walker testified that he initiated contact with Detective Thomas Boetcher of the Fort Worth Police Department by sending him a series of letters regarding his jailhouse conversations with Dotson.  In the letters, Walker indicated that he wanted a pending burglary charge dismissed and that he asked Detective Boetcher to have the White Settlement Police Department reinvestigate the case against him.  On December 11, 2001, Detective Boetcher met with Walker and obtained a written statement detailing information received during Walker’s conversations with Dotson.  During the meeting, Detective Boetcher informed Walker that he had no control over the White Settlement Police Department and that he could not make any promises regarding his pending case.  Walker testified that after the meeting he continued to talk to Dotson about the case on his own accord and continued to send Detective Boetcher letters describing the encounters. According to Walker, Detective Boetcher never requested that Walker continue discussing Dotson’s case with him, nor did he say that it would benefit Walker in anyway with regard to his own case.
(footnote: 4)  In addition, although Walker admitted that his burglary charge was ultimately reduced to a misdemeanor, he maintained that the reduction of the charge was not due to his cooperation in the instant case, but rather because he passed a polygraph test. 

Viewing the evidence in the light most favorable to the trial court’s ruling, the record does not support Dotson’s contention that Walker was acting as an agent of the State when he conversed with Dotson.  Although the State accepted the information that Walker offered regarding Dotson’s case, it did nothing to encourage the elicitation of incriminating statements from Dotson. The State did not bargain for Walker’s assistance, nor did it promise Walker any benefit for his cooperation in Dotson’s case.  The evidence demonstrates that Walker was a self-initiated informant who hoped that his cooperation in Dotson’s case would curry favor with respect to his own case. 
 
See Manns
, 122 S.W.3d at 189 (holding jailhouse informant not state agent, but rather “an entrepreneur who exploited appellant for his own gain”).  Because Walker was not acting as a state agent when he elicited information from Dotson, we hold that the trial court did not abuse its discretion by overruling Dotson’s objections to Walker’s testimony.  We overrule Dotson’s third point.

V.  
Motion for Continuance

In his fourth point, Dotson contends that the trial court abused its discretion by overruling his motion for continuance.  Specifically, Dotson alleges that (1) he was not ready for trial because the State failed to give him adequate and timely notice and changed the theory of prosecution through reindictments shortly before trial and (2) the State failed to give reasonable notice of its intent to introduce extraneous offenses and unadjudicated bad acts in advance of trial despite his timely requests.  The State maintains that Dotson’s complaint is without merit because he cannot demonstrate that the denial of his request for a continuance resulted in actual prejudice.

Under the Texas Code of Criminal Procedure, a criminal action may be continued on the written motion of a defendant, so long as sufficient cause is fully set forth in the motion.  
Tex. Code Crim. Proc. Ann.
 art. 29.03 (Vernon 1989).  Granting or denying a motion for continuance is within the discretion of the trial court and will not be reversed on appeal unless it is shown that the court abused its discretion.  
Janecka v. State
, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 825 (1997).  To establish an abuse of discretion, the defendant must show that he was actually prejudiced by counsel’s inadequate preparation time.  
Id.
  Specific prejudice may include unfair surprise, an inability to effectively cross-examine the State’s witnesses, or the inability to adduce crucial testimony that could have been given by potential witnesses.  
See id
.  However, a mere statement that counsel did not have enough time to prepare an adequate defense does not demonstrate prejudice.  
Id.

In the instant case, although Dotson alleges that the denial of his continuance rendered his counsel unable to prepare an adequate defense, he fails to establish any specific prejudice arising from the trial court’s failure to continue the trial.  Our review of the record reveals that Dotson had ample notice of the State’s theory in the case well before trial.  In addition, the State provided Dotson with reasonable notice of its intent to introduce extraneous offenses and bad acts.  Moreover, Dotson fails to show that the denial of his continuance resulted in unfair surprise, his inability to effectively cross-examine the State’s witnesses, or his inability to adduce crucial testimony that could have been given by potential witnesses.  Absent a showing of actual prejudice, we cannot hold that the trial court abused its discretion by denying Dotson’s motion for continuance.  
See Heiselbetz v. State
, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995).  We overrule Dotson’s fourth point.

VI.  Jury Argument

In his fifth and sixth points, Dotson contends that the trial court erred by overruling his motion for mistrial because the State improperly commented on his failure to testify and his post-arrest silence during closing argument.  The State maintains that the complained-of argument did not comment on Dotson’s failure to testify or his post-arrest silence.  

During closing argument at the guilt-innocence phase of the trial, the State made the following argument to the jury:

That is not self-defense, and that is consistent with what Mr. Walker said.  He said when he discussed it in jail with the Defendant there was absolutely no claim of self-defense there.  The Defendant described gunning it, stomping on it, and there was no claim of self defense to Mr. Walker.  

Now, if he was going to try and look like the good guy in all this, why wouldn’t he have said that?

Dotson immediately objected to the argument as improperly commenting on his  failure to testify and his post-arrest silence.  The trial court sustained Dotson’s objection and instructed the jury to disregard the State’s argument.  Dotson then moved for a mistrial, and the trial court overruled his motion.  

To determine if a prosecutor’s comment constituted an impermissible reference to an accused’s failure to testify, we must consider whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily consider it to be a comment on the defendant’s failure to testify.  
Tex. Code Crim. Proc. Ann.
 art. 38.08 (Vernon 1979); 
see Bustamante v. State
, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); 
Fuentes v. State
, 991 S.W.2d 267, 275 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 1026 (1999).  The offending language must be viewed from the jury’s standpoint, and the implication that the comment referred to the accused’s failure to testify must be clear.  
Bustamante
, 48 S.W.3d at 765; 
Swallow v. State
, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992).  A mere indirect or implied allusion to the defendant’s failure to testify does not violate the accused’s right to remain silent. 
 Patrick v. State,
 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995), 
cert. denied
, 517 U.S. 1106 (1996).  The use of a defendant’s post-arrest silence is akin to a comment on his failure to testify at trial because it attempts to raise an inference of guilt arising from the invocation of a constitutional right.  
Dinkins v. State
, 894 S.W.2d 330, 356 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 832 (1995).

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for a mistrial, the issue is whether the trial court erred in denying the mistrial.  
Faulkner v. State
, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en banc op. on reh’g).  Its resolution depends on whether the court’s instruction to disregard cured the prejudicial effect, if any, of the improper argument.  
Id.  
Generally, an instruction to disregard impermissible argument cures any prejudicial effect. 
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied,
 532 U.S. 944 (2001); 
Dinkins
, 894 S.W.2d at 357. 
 
In assessing the curative effect of the court’s instruction to disregard, the correct inquiry is whether, in light of the record as a whole, the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that the instruction to disregard was ineffective.  
Wesbrook,
 29 S.W.3d at 115-16.  If the instruction cured any prejudicial effect caused by the improper argument, a reviewing court should find that the trial court did not err.  
Dinkins
, 894 S.W.2d at 357; 
Faulkner
, 940 S.W.2d at 312.  

Viewed in context, the complained-of argument is ambiguous at best and does not appear to improperly comment on either Dotson’s failure to testify at trial or his post-arrest right to remain silent.  The State’s argument appears to relate solely to Dotson’s jailhouse conversations with Walker, a non-government agent, not to times at trial or post-arrest when 
the invocation of a constitutional right was at issue.
  During his testimony, Walker stated that Dotson never told him that Sitko’s death was an accident or was not intentional.  Thus, the State’s argument merely attempted to point out Dotson’s failure to justify Sitko’s death during his conversations with Walker when he chose not to remain silent.  

However, even assuming that the State did indirectly comment on Dotson’s failure to testify or his post-arrest right to remain silent, the trial court’s instruction to disregard was sufficient to cure any harm resulting from the argument.  Therefore, we hold that the trial court did not err by overruling Dotson’s motion for mistrial.  We overrule Dotson’s fifth and sixth points. 

VII.  Deadly Weapon Finding

Dotson also raises three points challenging the trial court’s affirmative deadly weapon finding.  Specifically, Dotson alleges that the deadly weapon finding was improper because (1) the finding required a higher mental state than that determined by the jury for the offense of manslaughter, (2) the State failed to give timely notice of its intent to seek the deadly weapon finding on the lesser included offense of manslaughter, and (3) the evidence is insufficient to prove that he used or exhibited a deadly weapon by the manner of its use or intended use.  The State maintains that the affirmative deadly weapon finding is appropriate in the instant case and is supported by sufficient evidence.  

Dotson argues that because he was found guilty of 
recklessly
 committing manslaughter by the use of a motor vehicle, he cannot also have been found to have
 intentionally
 used or exhibited the same motor vehicle as a deadly weapon.  Therefore, he complains that the evidence is legally and factually insufficient to support the trial court’s affirmative deadly weapon finding because the finding required a higher culpable mental state than recklessness. He also complains that the evidence is legally and factually insufficient to prove that he used or exhibited a deadly weapon by the manner of its use or intended use. 

Under Texas law, all felonies are theoretically susceptible to an affirmative deadly weapon finding.  
Patterson v. State
, 769 S.W.2d 938, 940 (Tex. Crim. App. 1989).  A deadly weapon is “anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.”  
Tex. Penal Code Ann.
 § 1.07(a)(17)(B) (Vernon Supp. 2004-05).  The plain language of section 1.07(a)(17)(B) does not require that the actor actually intend death or serious bodily injury; rather, “[t]he placement of the word ‘capable’ in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force.”  
Bailey v. State
, 38 S.W.3d 157, 159 (Tex. Crim. App. 2001).  An object qualifies as a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury.  
Id
.  Therefore, the operation of a motor vehicle may constitute the “use” of a deadly weapon and no intent to use the vehicle as a weapon need be shown to sustain an affirmative finding.  
Walker v. State
, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995).  Consequently, we reject Dotson’s contention that a deadly weapon finding is improper in the instant case merely because the offense of manslaughter required less than intentional conduct.  
Accord George v. State
, 117 S.W.3d 285, 290 (Tex. App.—Texarkana 2003, pet. ref’d); 
Ivie v. State
, 905 S.W.2d 701, 702 (Tex. App.—Houston [14th Dist.] 1995, no pet.).  

In addition, our review of the record reveals sufficient evidence to support the trial court’s finding that Dotson operated his RV in such a manner as to render it capable of causing serious bodily injury or death.  In the instant case, the evidence demonstrates that Dotson drove his RV towards Sitko and swerved slightly in Sitko’s direction, 
thereby striking and killing her with his RV. 
See Tyra v. State
, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995) (stating 
that “driving an automobile constitutes the use of it and that driving it in a manner capable of causing death or serious bodily injury constitutes it a deadly weapon”).  
Based on the evidence presented at trial, the evidence is both legally and factually sufficient to support the trial court’s affirmative deadly weapon finding.

Dotson also alleges that the State failed to provide him with timely notice of its intent to seek a deadly weapon finding with respect to the lesser included offense of manslaughter.  We disagree.  On January 24, 2002, Dotson was charged with Sitko’s murder.  The indictment alleged that Dotson intentionally or knowingly caused Sitko’s death by striking her with a motor vehicle.  On May 22, 2003, Dotson was reindicted, and the reindictment 
alleged murder and manslaughter, and contained an express allegation that he used or exhibited a deadly weapon during the commission of the offense.  It is well settled law that an allegation of serious bodily injury or death caused by some act or instrument is sufficient notice for a deadly weapon finding.  
Ex parte Beck
, 769 S.W.2d 525, 526 (Tex. Crim. App. 1989); 
see also Ex parte McKithan
, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992) (recognizing that motor vehicle can be deadly weapon in manslaughter case for purposes of providing notice in indictment). Contrary to Dotson’s allegations, he was given more than sufficient notice of the State’s intent to seek a deadly weapon finding on the lesser included offense of manslaughter
.  The January 24 indictment was sufficient to put Dotson on notice that the State intended to seek a deadly weapon finding, and the January 24 indictment necessarily included the lesser offense of manslaughter.  
See Allison v. State
, 618 S.W.2d 763, 764 (Tex. Crim. App. [Panel Op.] 1981).  Therefore, we overrule Dotson’s seventh, eighth, and ninth points. 

VIII.  Motion for New Trial

In his tenth point, Dotson contends that the trial court abused its discretion by failing to conduct a hearing on his motion for new trial.  The State maintains that the trial court did not abuse its discretion by failing to hold a hearing on Dotson’s motion for new trial because the allegations in Dotson’s motion were either determinable by the record or unsupported by factual allegations in his motion and supporting affidavit.

The right to a hearing on a motion for new trial is not absolute.  
Reyes v. State
, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993).  However, a defendant is entitled to a hearing on his motion for new trial
 if the motion
 and the supporting affidavits raise matters not determinable from the record that could entitle him to relief.  
Wallace v. State
, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003).  To be sufficient to entitle the defendant to a hearing, the motion for new trial and accompanying affidavits need not establish a prima facie case for a new trial.  
Jordan v. State
, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994).  These documents need merely reflect that reasonable grounds exist for holding that a new trial could be granted.  
Martinez v. State
, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002).  As a prerequisite to obtaining a hearing, the motion must be supported by an affidavit that specifically demonstrates the truth of the grounds for attack.  
Id. 
at 21. 
 
Affidavits that are conclusory in nature and unsupported by facts are not sufficient to put the trial court on notice that reasonable grounds for relief exist.  
Jordan
, 883 S.W.2d at 665.  We review the trial court’s decision not to hold a hearing on a motion for new trial under an abuse of discretion standard.  
Wallace
, 106 S.W.3d at 106.

On June 20, 2003, Dotson filed and presented an amended motion for new trial to the trial court.  The trial court never signed a written order denying Dotson’s motion for new trial, and it was overruled by operation of law. Dotson’s amended motion set forth several grounds
 alleged as a basis for new trial.  In Dotson’s brief, however, 
the only grounds mentioned concern the denial of his motion for continuance and alleged jury misconduct; thus, we will only address these two grounds on appeal.
 

In his amended motion for new trial, Dotson claimed that the trial court abused its discretion by denying his motion for continuance because (1) the State failed to give him adequate and timely notice and changed the theory of prosecution through reindictments shortly before trial and (2) the State failed to give reasonable notice of its intent to introduce extraneous offenses and unadjudicated bad acts in advance of trial despite his timely requests
.  He concluded that “[b]y denying the continuance[,] the Court denied [him] a fair trial.”  He also claimed “that the jury committed jury misconduct in that it failed to follow the jury instructions submitted upon the law of self-defense and necessity as well as that of manslaughter.”  The motion contained sworn verifications by Dotson and his counsel that the contents of the motion were based on personal knowledge and were true and correct.  Dotson, however, failed to attach an affidavit to his motion in support of his contentions.  

Our review of the record reveals that Dotson’s allegations in his amended motion for new trial were conclusory in nature, and therefore, insufficient to put the trial court on notice that reasonable grounds for relief existed.  
See King v. State
, 29 S.W.3d 556, 568-69 (Tex. Crim. App. 2000) 
(holding that trial court did not err in refusing to hold a hearing
 because bare assertions in verified motion failed to establish facts entitling defendant to a new trial); 
Buerger v. State
, 60 S.W.3d 358, 362-63 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d) (holding 
affidavit was too conclusory, in part, because despite appellant's incompetence claim, he “did not allege what medication he needed; why it was needed or how its absence affected his competency during the hearing; what aspect of the hearing he failed to appreciate . . . ; or what he would have changed if he had been alert and oriented . . . ”
)
;
 
Watson v. State
, 37 S.W.3d  559, 561 (Tex. App.—Beaumont 2001, no pet.) 
(holding defendant's affidavit stating, “I wish to state that I did not intelligently, knowingly[,] or voluntarily enter my plea. I did not understand the plea agreement fully, and I did not understand the consequences of my plea,” was too conclusory); 
see also Reed v. State
, 841 S.W.2d 55, 57 (Tex. App.—El Paso 1992, pet. ref’d) (stating that a motion for new trial alleging jury misconduct must be supported by the affidavit of a juror or another person in the position to know the facts or must state some reason or excuse for the failure to produce such an affidavit). 
Because Dotson failed to establish facts demonstrating the truth of his grounds for attack and
 entitling him to a new trial, 
the trial court did not abuse its discretion by failing to conduct a hearing on his motion.  Accordingly, we overrule Dotson’s tenth point.  

IX.  Conclusion

Having overruled all of Dotson’s points on appeal, we affirm the trial court’s judgment.  

SUE WALKER

JUSTICE

PANEL A: WALKER, J.; SAM J. DAY, J. (Retired, Sitting by Assignment); and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment).

PUBLISH

DELIVERED: September 2, 2004

FOOTNOTES
1:
Dotson also challenges the sufficiency of the evidence to support the trial court’s affirmative deadly weapon finding, complaining that “because he was found guilty of recklessly committing manslaughter[,] he cannot be found to have intentionally used or exhibited a deadly weapon.”  Because he also raises this complaint as his seventh point, we will address it later in this opinion.

2:
On June 11, 2003, Dotson stipulated to the sixty-foot distance provided by Detective Wangler.

3:
The trial court granted Dotson a running objection to Walker’s testimony.  The substance of Walker’s testimony is detailed in the legal and factual sufficiency portion of this opinion.   

4:
While testifying in front of the jury, Walker once again proclaimed that he was not acting on behalf of the State during his conversations with Dotson and that Detective Boetcher did not offer him any sort of deal in exchange for information about Dotson’s case.