

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00460-CR

JASON KYLE GEE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

### FROM THE 271ST DISTRICT COURT OF WISE COUNTY
### TRIAL COURT NO. CR18318

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted appellant Jason Kyle Gee of aggravated assault with a deadly weapon. On appeal from that conviction, in one issue, he contends that the evidence is insufficient because it does not disprove his claim that he acted in justifiable self-defense. We conclude that the evidence is sufficient to support the conviction, so we affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts[2]

Appellant admitted at trial and concedes on appeal that he used a knife to slash the throat of Clifton Skinner. The critical issue upon which this appeal turns is whether the evidence supports the jury's implicit rejection of appellant's claim that the law of self-defense justified this act.

One day in March 2015, appellant and Jeseca Drury, who were dating each other, visited the house of Bryon Nabors and Michelle Combs. Drury wanted to trade two power tools for illegal drugs, and Nabors called Skinner to facilitate the trade. Skinner arrived at the house. According to Nabors, appellant gave Skinner the power tools, and Skinner gave appellant methamphetamine.

According to Combs, after Skinner left, appellant became upset. Appellant believed that Skinner had "shorted" Drury on the agreed-upon amount of methamphetamine. Skinner had agreed to deliver one gram of methamphetamine but had given Drury only about half a gram. Nabors attempted to contact Skinner again but was not able to immediately reach him. Nabors observed that appellant "storm[ed] around" and "kept talking about" the fact that Skinner had not delivered the promised amount of drugs.

Later that night, appellant, Drury, Nabors, and Combs—all of whom had been using methamphetamine that day—traveled together in Nabors's truck and

---

[2]The facts in the first part of this section are based largely on the testimony of witnesses other than appellant. Appellant provided different and additional details in his testimony, and we will discuss those details below.

spotted Skinner and Jessica Puckett (Skinner's girlfriend), who were riding together in Puckett's car. Both vehicles pulled over. Nabors got out of his truck and approached Skinner. They spoke for a couple of minutes. According to Nabors, Skinner conveyed that he would eventually deliver more methamphetamine.

When Nabors got back into the truck, he attempted to reassure appellant that Skinner was "going to take care of the situation." Drury testified that Nabors told appellant that Skinner did not "have anything" at that time and that appellant could "check back with him in a couple of hours." But appellant became angrier, jumped out of the truck, moved toward Puckett's car with a knife in his hand, yelled in that direction, and attempted to slash or stab a tire with the knife as Skinner began to drive away. Skinner testified, "[Appellant] went to make a stabbing motion toward me or the car or something, and I mashed on the accelerator." According to Drury, when appellant returned to the truck, he said, "I cannot believe I stabbed [Puckett's] tire."

Skinner saw appellant's attempt to slash the tire and became angry. Knowing that appellant had a knife, he circled back toward Nabors's truck, stopped the car, got out of it, and approached appellant, who had returned to the truck. Skinner said to appellant, "You just fucked up, boy." Nabors heard Skinner's words and believed that Skinner was going to "whip [appellant's] ass."

Appellant and Skinner began to fight. During the fight, appellant used the knife to slash Skinner's throat. The sequence of when appellant did so is in

3

dispute. According to Skinner, when he approached appellant, appellant slashed his throat, and Skinner then began to hit appellant with a car door in attempt to hurt him and knock him off balance. Skinner testified, "[A]fter I felt the impact is when I started slamming the door." According to Drury and appellant, however, Skinner slammed appellant with the door before appellant slashed Skinner's neck.

Puckett moved Skinner back toward her car, and according to Puckett, appellant "came at [her] with the knife." After Puckett helped Skinner get in the car, while he was severely bleeding in the front passenger's seat and trying to hold pressure against his neck with a shirt, she drove toward a hospital and called 9-1-1.

At the same time, appellant jumped into Nabors's truck and told Nabors to "get him out of [there]." He shouted at Nabors and Combs, telling them not to say anything to anyone about what had occurred. According to Nabors, appellant said that Nabors and Combs "better not say a damn thing or [he would] kill [them] both." Nabors eventually pulled over, and appellant and Drury got out of the truck. They hid near a bush and called appellant's mother. Appellant threw the knife away. Nabors and Combs returned home.

Puckett and Skinner eventually arrived at a hospital. Skinner had emergency surgery to treat a lacerated jugular vein and an exposed trachea. In one of Skinner's pockets, the police found a small folding pocketknife; the police did not recover any other weapons from Skinner, from the car he had been in, or

4

from the scene of the crime. The police discovered Skinner's fingerprint and his blood on a door of Nabors's truck. A police officer spoke with appellant after arresting him. Appellant did not deny slashing Skinner's throat or claim that Skinner had used a weapon during the incident, but he stated that he had feared for his life and that he was trying to get away before Skinner attacked him.

A grand jury indicted appellant for aggravated assault; the indictment alleged that the knife he had used qualified as a deadly weapon. Appellant received appointed counsel, chose the jury to assess his punishment in the event of his conviction, and pled not guilty. At trial, he testified that when he approached Puckett's car, a window was down, and he asked Skinner "if he was going to make it right." According to appellant, at that point, Skinner became angry, reached under his seat "for something," and attempted to open his door. Appellant initially did not let him. Skinner told appellant to "[s]tep back from [his] fucking door," and appellant then did so. Skinner got out of the car, but Puckett began yelling at him, and he got back into the car and began to drive away. At that point, appellant punched one of Puckett's tires with one hand while holding the knife with his other hand.[3] He had pulled his knife out because he had thought that Skinner had "pulled something from underneath his seat."

According to appellant, he was "really scared" when Skinner circled Puckett's car back toward him, got out of the car, and approached him.

---

[3]Appellant told the jury that the witnesses who had testified that he had stabbed or slashed at the tire with the knife were wrong.

5

Appellant testified that he "thought [Skinner] had pulled" a weapon. He testified that Skinner opened the door of the truck and repeatedly slammed it against him. According to appellant, because he had "nowhere to go," thought Skinner had a weapon (although not knowing whether Skinner did), and feared for his life, he slit Skinner's throat.

Appellant testified that he thought that Skinner had a weapon because he "got in his car and came back." But appellant admitted that he never saw Skinner with a weapon. Appellant also admitted that he had displayed a deadly weapon (the knife) in an aggressive manner to Skinner before Skinner drove away and then circled back toward him. Appellant denied that he had threatened Puckett with the knife after slashing Skinner's throat.

The trial court's charge to the jury on the issue of appellant's guilt contained language related to the law of self-defense and instructed the jury as follows:

> [I]f you believe from the evidence beyond a reasonable doubt . . . that [appellant] did . . . intentionally, knowingly[,] or recklessly cause bodily injury to Clifton Skinner by cutting Clifton Skinner with a knife, and the defendant did then and there use or exhibit a deadly weapon . . . during the commission of said assault, then you will find the defendant guilty[,] . . . but [if] you further find from the evidence, or you have a reasonable doubt thereof, that . . . the defendant reasonably believed that from the words or conduct, or both, of Clifton Skinner, it reasonably appeared to the defendant, as viewed from his standpoint, that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force by Clifton Skinner, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Clifton Skinner's use or

6

attempted use of unlawful deadly force, he cut Clifton Skinner, then you will find the Defendant not guilty . . . .

> . . . .

> If you find from the evidence beyond a reasonable doubt that . . . the defendant did not reasonably believe that he was in danger of death or serious bodily injury, or that the defendant . . . did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against Clifton Skinner's use or attempted use of unlawful deadly force, then you should find against the defendant on the issue of self-defense.

After receiving the parties' evidence and arguments on the issue of appellant's guilt, the jury deliberated for less than an hour and found him guilty. The jury then received further evidence and arguments concerning his punishment and assessed seventy-five years' confinement. The trial court sentenced him accordingly, and he brought this appeal.

## Evidentiary Sufficiency

In his only issue, appellant contends that the evidence does not support his conviction. Specifically, he argues that the evidence is not sufficient to support the jury's implicit rejection of his claim that he acted in justifiable self-defense.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard gives full play to the

7

responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

A person commits aggravated assault with a deadly weapon if he intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon—here, a knife—during the commission of the assault. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2016), § 22.02(a)(2) (West 2011); *see also id.* § 1.07(a)(17)(B) (West Supp. 2016) (defining "deadly weapon" as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury).

However, section 9.31(a) of the penal code provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor

against the other's use or attempted use of unlawful force." *Id.* § 9.31(a) (West 2011).  Similarly, section 9.32(a) provides that a "person is justified in using deadly force against another" if the person is justified in using force under section 9.31 and the person "reasonably believes the deadly force is immediately necessary" to protect himself "against the other's use or attempted use of unlawful deadly force."[4]  *Id.* § 9.32(a)(1), (2)(A) (West 2011).  An actor's belief that the use of deadly force is immediately necessary is presumed to be reasonable when the actor

> (1) knew or had reason to believe that the person against whom the deadly force was used:
>
>> (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;
>>
>> (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or
>>
>> (C) was committing or attempting to commit an offense described by Subsection (a)(2)(B);
>
> (2) did not provoke the person against whom the force was used; and

---

[4]Deadly force is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury."  Tex. Penal Code Ann. § 9.01(3) (West 2011).  Appellant conceded in the trial court and does not dispute on appeal that he used deadly force against Skinner and must therefore comply with the requirements of section 9.32 for using deadly force in self-defense.

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

*Id.* § 9.32(b)(1)–(3).

A defendant has the burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). After the defendant has introduced some evidence of a defense, the State bears the burden of persuasion to disprove it. *Id.*; *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991); *Dotson v. State*, 146 S.W.3d 285, 291 (Tex. App.—Fort Worth 2004, pet. ref'd). This burden does not require the State to produce evidence disproving the defense; it requires only that the State prove its case beyond a reasonable doubt. *Dotson*, 146 S.W.3d at 291. To determine the sufficiency of the evidence involving a self-defense claim, we ask whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt and also could have found against the appellant on the self-defense issue beyond a reasonable doubt. *Id.* A guilty verdict is an implicit finding rejecting self-defense. *Saxton*, 804 S.W.2d at 914.

The statements of the defendant and his witnesses do not conclusively prove a claim of self-defense. *Smith v. State*, 355 S.W.3d 138, 146 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Rather, one product of the jury's exclusive role of assessing witnesses' credibility is that the jury "is free to believe or

10

disbelieve the testimony of any witness, to reconcile conflicts in the testimony, and to accept or reject any or all of the evidence of either side."[5]  *Bottenfield v. State*, 77 S.W.3d 349, 355 (Tex. App.—Fort Worth 2002, pet. ref'd), *cert. denied*, 539 U.S. 916 (2003).

On appeal, appellant predicates a large part of his argument on an assertion that under section 9.32(b), he was entitled to the presumption that he reasonably believed that deadly force was immediately necessary.  *See* Tex. Penal Code Ann. § 9.32(b).  He contends that he was entitled to the presumption because at the time he slashed Skinner's neck, Skinner was "either attempting to enter the truck to get [him] or extract [him] from" the truck and because he did not provoke the altercation.  *See id.* § 9.32(b)(1)(A)–(B), (2).

Even assuming that the evidence proves those requirements for applying the presumption, we cannot agree that appellant is entitled to the presumption because viewing the evidence in the light most favorable to the verdict, the jury could have rationally found that when appellant slashed Skinner's throat, he was engaged in criminal activity.  *See id.* § 9.32(b)(3).  Specifically, the evidence, including appellant's own testimony, showed that he was high on methamphetamine, an illegal drug, when the altercation with Skinner occurred and that the origin of the dispute concerned appellant's attempt to obtain more

---

[5]Thus, the jury was free to reject all or part of appellant's testimony, including that he believed Skinner had a weapon and that he feared for his life when he cut Skinner's neck.

11

methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.102(6) (West 2010). Appellant testified that hours before the altercation, he sent a message to Puckett on Facebook to see whether Skinner was going to "make it right," meaning deliver more methamphetamine. And just before the altercation, appellant got out of Nabors's truck and approached Skinner "to see if he was going to make it right." Appellant testified, "I just asked him . . . if he was going to make it right. If not, if maybe he could . . . give some money back instead of drugs."

Because appellant's dispute with Skinner that led to the slashing of Skinner's throat focused on appellant's attempt to obtain methamphetamine, the jury could have rationally found that he was engaged in criminal activity and was not entitled to the statutory presumption.[6] *See* Tex. Penal Code Ann. § 9.32(b)(3); *see also id.* § 15.01(a) (West 2011); Tex. Health & Safety Code Ann. §§ 481.108, .115(a) (West 2010); *Larrinaga v. State*, No. 02-14-00199-CR, 2015 WL 4730710, at *2–3 (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that a trial court did not err by refusing to include a jury-charge instruction concerning the statutory presumption because the evidence showed that the defendant was a felon who was illegally possessing a firearm when he allegedly used self-defense); *Barrios v. State*, 389

---

[6]Alternatively, we also note that Drury, appellant's then-girlfriend, testified that she had been told that the knife that appellant used to slash Skinner's neck was illegal, that she had previously told him to stop carrying it, and that she believed he had stopped carrying it.

S.W.3d 382, 393–94 (Tex. App.—Texarkana 2012, pet. ref'd) (holding that the presumption could not apply because the defendant was an illegal immigrant who was possessing a firearm in violation of federal law).

With no need to apply the statutory presumption, the jury could have rationally rejected appellant's self-defense claim by finding that he could not have reasonably believed that deadly force was immediately necessary to prevent Skinner's use or attempted use of deadly force. *See* Tex. Penal Code Ann. § 9.32(a)(2)(A); *see also Barrios*, 389 S.W.3d at 393 ("When the accused is engaged in other criminal activity, the statute does not disqualify the accused from defending his or her use of force, it simply removes the presumption that his or her use of force was reasonable—a significant difference."). Combs testified that she never saw Skinner brandish any weapons and never heard Skinner threaten deadly force. When the State asked Combs whether Skinner appeared to be trying to kill appellant, she replied, "All I seen was them two fighting." Combs explained that when appellant got back into Nabors's truck after attacking Skinner, he did not say that Skinner had tried to kill him.

Nabors testified that Skinner never displayed any weapon and did not do anything toward appellant that threatened deadly force. Puckett testified that she never saw Skinner with a gun on the night that appellant slashed his throat and that while Skinner had a pocket knife, he never took it out of his pocket. Puckett also opined that appellant provoked the altercation by attempting to stab her tire.

13

She stated that she never saw Skinner use or threaten deadly force against appellant.

Skinner testified that he never threatened to kill appellant and that he never used his knife. He also testified that he never pretended to have a gun, did not have a gun, and never threatened or used deadly force against appellant. Finally, he testified that he did not slam appellant with the door of Nabors's truck until appellant had already cut his throat.

Drury testified that she never saw Skinner possess a weapon on the night appellant slashed his throat. She admitted that Skinner never threatened deadly force against appellant that night.

Based on all of the evidence summarized above and the remaining evidence in the record, and even considering appellant's testimony that Skinner had slammed him with the door before he slashed Skinner's neck and that he subjectively feared for his life, the jury could have rationally found that Skinner's words and acts could not have produced any reasonable belief by appellant of an immediate threat of unlawful deadly force against him. *See* Tex. Penal Code Ann. §§ 9.31(a)(2), .32(b)(2). Viewing the evidence in the light most favorable to the verdict and deferring to the jury's role to draw inferences from the evidence and resolve conflicts from it, we conclude that the jury could have rationally found the essential elements of aggravated assault beyond a reasonable doubt and also could have found against appellant on self-defense beyond a reasonable

14

doubt.  *See id.* §§ 9.31, .32, 22.02(a)(2); *Saxton*, 804 S.W.2d at 914; *Dotson*, 146 S.W.3d at 291.  We overrule appellant's only issue.

## Conclusion

Having overruled appellant's only issue, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER AND MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 6, 2017