

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NOS.  2-08-458-CR
2-08-459-CR
2-08-460-CR
2-08-461-CR

JERRY EUGENE MILLER, II                                       APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

------------

## OPINION

------------

### I. Introduction

Appellant Jerry Eugene Miller, II argues the trial court should have granted his motions to suppress evidence.  In two points, Appellant argues that the arrest and search warrants were not supported by probable cause and that his videotaped statement was taken after his illegal arrest and was not voluntarily given.  We will affirm.

## II. Procedural Background

Appellant was charged in four separate indictments with felony theft offenses: two indictments alleged theft over $20,000 but less than $100,000, and two indictments alleged theft over $1,500 but less than $20,000. *See* Tex. Penal Code Ann. § 31.03(e)(4)–(5) (Vernon Supp. 2009). By filing motions to suppress in each of the four cases, Appellant sought to suppress "all evidence seized" by challenging the probable cause supporting his arrest and search warrants and the voluntariness of his videotaped statement. The trial court denied each of Appellant's motions to suppress after conducting two evidentiary hearings. Appellant thereafter entered a plea of nolo contendere to each of the charged offenses. Pursuant to the plea agreement, the trial court deferred an adjudication of Appellant's guilt and placed him on ten years' community supervision in two cases and five years' community supervision in the other two cases. These appeals followed.

## III. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154

2

S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### IV. Appellant's Arrest

Appellant contends in part of his first point that the trial court should have granted his motion to suppress because the arrest warrant affidavit did not establish probable cause. The State counters that, even if the arrest warrant is invalid, the arresting officers witnessed Appellant commit an offense in their presence and could have validly arrested Appellant without a warrant.

"A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005); *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002). The test for probable cause for a warrantless arrest under article 14.01(b) is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Steelman*, 93 S.W.3d at 107 (quoting *Beverly v. State*, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990)).

3

Here, the officers could have validly arrested Appellant because the truck he was driving at the time of his arrest was stolen. Investigator James Peel testified at the suppression hearing that he knew the truck Appellant was driving at the time of his arrest was stolen because Investigator Kevin Hilliard had described the truck as stolen and two or three named informants in custody had described the stolen truck to investigators. Investigator Hilliard similarly testified that the officers on the scene knew the vehicle Appellant was driving had been stolen; Michael Brooks had previously informed Investigator Hilliard that Appellant was currently driving a stolen Dodge truck and that Appellant had taken the VIN plate from a Dodge truck he owned and placed it onto the stolen Dodge truck he was driving. And Investigator Hilliard had previously seen a Dodge truck on Appellant's property with a missing VIN plate. This reasonably trustworthy information gave the officers probable cause to arrest Appellant without a warrant for committing the offenses of theft, unauthorized use of a motor vehicle, or tampering with vehicle identification numbers. *See* Tex. Penal Code §§ 31.03, .07(a) (Vernon 2003), .11(a) (Vernon Supp. 2009); *Brown v. State*, 986 S.W.2d 50, 52 (Tex. App.—Dallas 1999, no pet.) (holding computer database report indicating vehicle was stolen provided officers with probable cause to make warrantless arrest of driver).

Because the arresting officers witnessed Appellant commit at least one offense in their presence, the officers could have validly arrested Appellant without a warrant. *See* Tex. Code Crim. Proc. Ann. art. 14.01(b); Tex. Penal Code §§ 31.03,

4

.07(a), .11(a). Therefore, we need not decide whether Appellant's arrest warrant provided the magistrate with sufficient information to support an independent judgment that probable cause existed for the warrant. *See* Tex. R. App. P. 47.1. We overrule this portion of Appellant's first point.

## V. The Three Search Warrants

Appellant argues in the remainder of his first point that the three search warrants were not based on probable cause. In deciding whether to address the merits of an appeal from the denial of a motion to suppress, we must first identify the fruits that the trial court declined to suppress. *Gonzales v. State*, 966 S.W.2d 521, 524 (Tex. Crim. App. 1998). If it is not clear from the testimony and exhibits what the "fruits" are, then we need not address the merits of the claim. *Id.*

In this case, Appellant's motions sought to suppress "certain items [that] were allegedly seized" and "any evidence obtained pursuant to the warrants." Appellant's brief in this court similarly states that he sought to suppress "all evidence seized" in his four cases. Nowhere, though, has Appellant identified the specific items of evidence or categories of evidence he sought to exclude by challenging the three search warrants. Appellant has therefore presented nothing for our review. *See Brennan v. State*, 140 S.W.3d 779, 781 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (holding global request to suppress "all evidence seized or obtained" from alleged illegal searches and failure "to identify what, if any, evidence was ruled upon

5

by the denial" presented nothing for appellate review). We overrule the remainder of Appellant's first point.

## VI. Appellant's Videotaped Statement

Appellant argues in his second point that the trial court erred by denying his motion to suppress his oral and written statements. Specifically, Appellant contends that his videotaped statement should have been suppressed because it was taken after his illegal arrest and was not freely and voluntarily given.

### A. Legality of Appellant's Arrest

Appellant first contends his videotaped statement should be suppressed because it was taken after his illegal arrest. We held above, however, that Appellant's arrest was not illegal because Appellant committed an offense in the officers' presence. We therefore overrule this portion of Appellant's second point.

### B. Voluntariness of Appellant's Statement

Appellant also argues that his videotaped statement should have been suppressed because it was not voluntarily given. Specifically, Appellant contends his statement was involuntary because he was held in "a solitary, brutally cold cell for several hours" without food and water and because investigators allegedly made promises to him during the interrogation. The trial court found that the "[s]tatements made by [Appellant] were voluntary and not the result of coercive police activity nor were they given as a result of improper promises made by police officers."

#### 1. Applicable Law

6

An accused's statement is admissible evidence if the accused made it freely and voluntarily and without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2005). When deciding whether a statement was voluntary, we consider the totality of the circumstances in which the statement was obtained. *Creager v. State,* 952 S.W.2d 852, 855 (Tex. Crim. App. 1997); *Reed v. State,* 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd). A confession is involuntary if circumstances show that the defendant's will was "overborne" by police coercion. *Creager,* 952 S.W.2d at 856. The defendant's will may be "overborne" if the record shows that there was "official, coercive conduct of such a nature" that a statement from the defendant was "unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State,* 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *Frank v. State,* 183 S.W.3d 63, 75 (Tex. App.—Fort Worth 2005, pet. ref'd).

If a promise made by a person in authority induced a confession, then that confession is inadmissible. *Penry v. State*, 903 S.W.2d 715, 748 (Tex. Crim. App.), *cert. denied*, 516 U.S. 977 (1995); *Alvarez v. State*, 649 S.W.2d 613, 620 (Tex. Crim. App. 1982), *cert. denied*, 464 U.S. 849 (1983). But before a promise will render a confession inadmissible, the promise must be shown to have induced the confession because it was positive for the defendant, made or sanctioned by someone in authority, and of such an influential nature that the appellant might speak untruthfully in response. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App.), *cert. denied*,

7

510 U.S. 837 (1993). In our review, we look to whether the circumstances of the promise would reasonably induce a defendant to admit to a crime he did not commit. *Sossamon v. State*, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991), *abrogated on other grounds by Graham v. State*, 994 S.W.2d 651 (Tex. Crim. App. 1999).

### 2. Analysis

Appellant argues that the condition of his detention rendered his videotaped statement involuntary. Appellant testified at the suppression hearing that he was kept in a cold cell for ten hours without a blanket, food, or water. However, Investigator Jody Johnson testified that he did not recall Appellant complaining on the day of the interview about the conditions of the jail or saying that he was cold or hungry. And Investigator Hilliard testified that he interviewed Appellant approximately four hours after he was arrested. Given this conflicting testimony, the voluntariness of Appellant's videotaped statement involved the trial court's evaluation of credibility and demeanor. *See Stewart v. State*, No. 04-08-00274-CR, 2009 WL 2183397, at *6 (Tex. App.—San Antonio July 21, 2009, pet. ref'd) (mem. op., not designated for publication) (holding trial court did not err by finding oral statements voluntarily given when trial court heard conflicting evidence concerning the appellant's alleged deprivation of food, water, medication, or bathroom access over the course of twelve hours). Deferring as we must to the trial court's determination of credibility and demeanor, we hold the trial court did not abuse its discretion by finding the conditions of Appellant's detention did not render his videotaped

8

statement involuntary. *See Bell v. State*, 169 S.W.3d 384, 391–92 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding eight hours of questioning while in handcuffs and leg shackles did not render confession involuntary where appellant never indicated he did not want to answer any more questions or wanted to speak to attorney and never requested food, water, or bathroom breaks).

Appellant also argues that his oral statements were involuntary because investigators made the following "promises" to him during the interview: (1) telling Appellant he was arrested because he "blew off" investigators after they asked him to help recover the stolen property; (2) offering to make Appellant's arrests on other charges more convenient by allowing him to turn himself in or be arrested for several charges at one time; (3) offering to not mention Appellant's girlfriend (his alibi witness) to his wife when they questioned her about Appellant's crimes; (4) telling Appellant that telling the truth is "a start" for how to get out of trouble but simultaneously saying they were not making any promises to Appellant; (5) offering to ask the district attorney to drop the charges for a motorcycle theft but also stating the investigator could not promise the district attorney would agree to drop the charges; and (6) telling Appellant they would not arrest him on other charges immediately but instead would give him time to gather other stolen property before they arrested him again. We do not believe any of these alleged promises rendered Appellant's videotaped statement involuntary.

9

Appellant testified at the suppression hearing that he did not initiate the interview with the investigators and that he understood the investigators told him during the interview that the other cases they might file against him would "go away" if he "worked with" the investigators. On the other hand, Investigator Johnson testified that Appellant initiated the interview by asking to speak with him. Consistent with Investigator Johnson's testimony, the videotape shows that Investigator Johnson stepped into the room at the beginning of the interview and stated, "They said you wanted to talk to me." The videotape also shows that investigators read Appellant his *Miranda* rights and that Appellant acknowledged he understood his rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Appellant also testified that officers promised to dismiss charges against him if he cooperated with them, but the videotaped interview does not corroborate Appellant's testimony. Investigator Ricky Montgomery did tell Appellant during the interview that he would ask the district attorney to dismiss the charges against Appellant on the stolen motorcycle case if he helped them recover the stolen generator and other stolen property, but Investigator Montgomery simultaneously told Appellant that he could not promise Appellant anything, that the district attorney would decide whether to dismiss any charges, and that it was not Investigator Montgomery's decision to make. Moreover, the videotaped interview shows that the investigators repeatedly told Appellant he would in fact be charged in several cases but that they would make the process as convenient for him as they could if he would

10

help them recover the stolen property. For example, Investigator Hilliard offered to call Appellant once the cases were filed so Appellant could arrange for bond before he was arrested and possibly spend little to no time in jail before bonding out. But Investigator Hilliard also told Appellant that he did not have the authority to dismiss cases.

Given the explicit representations of lack of authority to dismiss charges, we do not believe the investigators' statements or offers were of such a nature that Appellant might speak untruthfully in response. *See Johnson*, 68 S.W.3d at 654–55 (holding defendant's confession voluntary where defendant initiated discussion of a deal to avoid death penalty, detective told defendant the police could make no guarantees, and detective indicated "police were without authority to make deals but instead could only relay information to the court and prosecutor"). After viewing the record in the light most favorable to the trial court's ruling and deferring as we must to the trial court's credibility determinations, we cannot say the trial court erred by finding that Appellant's oral statements were voluntarily given. *See Sossamon*, 816 S.W.2d at 345 (stating a promise must, among other things, be "of such character as would be likely to influence the defendant to speak untruthfully" before it will render a confession involuntary). We overrule the remainder of Appellant's second point.

## VII. Conclusion

Having overruled each of Appellant's two points, we affirm the trial court's judgments.


                                        BILL MEIER
                                        JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

PUBLISH

DELIVERED:  April 15, 2010