

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00072-CR
### NO. 02-12-00073-CR
### NO. 02-12-00074-CR

JEFFREY ALLAN MAXWELL                              APPELLANT

V.

THE STATE OF TEXAS                                      STATE

----------

## FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Jeffrey Allan Maxwell appeals his convictions for one count of aggravated kidnapping and two counts of aggravated sexual assault. In eleven points, Maxwell challenges the trial court's cumulation of his sentences, the venue in which his trial took place, the trial court's denial of his request to have

---

[1]*See* Tex. R. App. P. 47.4.

his audiotaped and videotaped confessions suppressed, the trial court's denial of his motion for mistrial, and the trial court's denial of his motion for continuance. We will modify the trial court's judgment in cause number CR11-0273 by deleting the language ordering cumulation of Maxwell's sentences and affirm that trial court's judgment as modified, and we will affirm the trial court's judgments in CR11-0271 and CR11-0272.

## II. BACKGROUND

Maxwell, who was a former neighbor to the sixty-two-year-old complainant in this case, appeared at the complainant's Parker County, Texas, residence on March 1, 2011. After a brief conversation, Maxwell sprayed her in the face with an aerosol, grabbed her, and then dragged her into her home. While on the back steps, Maxwell handcuffed her hands and legs. Once in the kitchen, he struck her with a rolling pin, and then he tied her up with an extension cord. From there, the complainant broke free, escaped from her home, and began to run down the street. Maxwell pursued her and, at gunpoint, ordered her to stop. He then gagged her, put her in his vehicle, and drove her to his home in Navarro County, Texas.

Once there, Maxwell stripped her of her clothing and attached her by her wrists to a deer-skinning hoist that he had built in his garage. After suspending her in the air with the hoist, Maxwell then proceeded to penetrate the complainant's anus and vagina with a small sexual device. He also whipped her several times, and then he threatened her with a fishing rod. Maxwell also used

2

a metal device to "pinch" the complainant's nipples. Later, Maxwell digitally penetrated her vagina. During this ordeal, the complainant testified that Maxwell told her that he had been hired to kill her, that he would have done it for free, and that he was going to keep her alive for two weeks.

While he held her captive for nearly two weeks, Maxwell would leave the house from time to time. The complainant recalled how he would either tie her to his bed, or gag her and then place her inside what she described as her "coffin"—a large wooden box he kept in his garage.

Maxwell became the focus of law enforcement's investigation into the complainant's disappearance because his vehicle matched the description of a vehicle seen leaving the area of the complainant's home a few days later, when the home caught fire and was destroyed. When officers arrived at Maxwell's home, armed only with a search warrant for his vehicle, he told them he did not know the complainant's whereabouts. As the officers talked with Maxwell on his porch, the complainant exited the residence. Officers took Maxwell into custody.

While awaiting a search warrant, the complainant became concerned about her purse and explained to one of the officers that she needed to retrieve her purse before she would go to the hospital. As the officer described at trial, "she was dead set that she was going to have her purse when she went to the hospital." The officer accompanied her back into the house to retrieve her purse: "[W]e went straight in, she knew right where it was at. We grabbed it – she grabbed it, and we went back outside."

3

After being arrested, Maxwell gave several recorded custodial interviews wherein he repeatedly gave detailed confessions to these charges. Additionally, both Maxwell's and the complainant's DNA were found on several of the items found in Maxwell's house, including shackles, sexual devices, and other personal items recovered. Officers found these items while searching the residence pursuant to a search warrant.

The State charged Maxwell with one count of aggravated kidnapping and two counts of aggravated sexual assault. The jury trial took place in Parker County. A jury found Maxwell guilty of all three charges and, after the punishment phase, assessed punishment at life imprisonment and a $10,000 fine for each of the charges. The trial judge pronounced these sentences accordingly. Later, on its own motion, the trial court entered a nunc pro tunc order, modifying its judgment in CR11-0273 (aggravated sexual assault) so that the sentence for that conviction would run consecutively to or be "stacked" upon the sentences for the other two convictions, CR11-0271 (aggravated kidnapping) and CR11-0272 (aggravated sexual assault). This appeal followed.

## III. DISCUSSION

### A. The Trial Court's Cumulation Order

In his first two points, Maxwell argues that the trial court erred by "stacking" the life sentence he received in cause number CR11-0273 on top of the sentences he received in cause numbers CR11-0271 and CR11-0272. The State concedes that because the complainant was not younger than seventeen

4

years of age, the sentence in CR11-0273 cannot run consecutively to the other sentences. *See* Tex. Penal Code Ann. § 3.03 (West Supp. 2013). We agree with Maxwell and the State.

The Texas Court of Criminal Appeals has held that a trial court's unlawful cumulation order is not reversible error and that the appropriate remedy on appeal is for the appellate court to reform the judgment by deleting the improper cumulation order. *Beedy v. State*, 250 S.W.3d 107, 110, 115 (Tex. Crim. App. 2008). Therefore, we modify the trial court's judgment in CR11-0273 by deleting the language ordering the cumulation of Maxwell's sentences. Maxwell's first two points are sustained.

## B. Venue

In points three, four, and five,[2] Maxwell argues that the trial court erred by denying his motion to quash the indictments in cause numbers CR11-0272 and CR11-0273, both aggravated sexual assault charges. Maxwell's motion to quash was predicated on the notion that even though the complainant's abduction

---

[2]Maxwell's fifth point alleges that "[t]he evidence of venue is insufficient to support the convictions of the appellant." Maxwell, however, does not cite any cases regarding the sufficiency of evidence to support venue nor does he endeavor to make an analysis under the applicable standard of review. *See Thierry v. State*, 288 S.W.3d 80, 90 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd.) ("As venue is not an essential element of an offense, the sufficiency of the evidence to establish venue is not reviewed under the traditional *Jackson v. Virginia* standard, nor any other standard established for reviewing the sufficiency of the essential elements of an offense, but under a distinct and specific standard articulated by the Court of Criminal Appeals in *Rippee v. State*."). Instead, Maxwell treats his points three, four, and five as a "joined" point of error. We will do the same.

5

occurred in Parker County, the sexual assaults occurred in Navarro County; thus, Navarro County would be the proper venue for these charges. The gist of Maxwell's argument is that because the sexual assault venue statute found in Texas Code of Criminal Procedure Article 13.15 does not specifically state that it applies to "aggravated" sexual assault, its provisions that venue is proper in the county where the abduction occurs applies only to non-aggravated sexual assaults. *See* Tex. Crim. Proc. Code Ann. art. 13.15 (West 2005).

Maxwell does not cite to any direct authority for his position; rather, Maxwell urges that we analogize his position to that found in *Murphy v. State*, where the Texas Court of Criminal Appeals addressed the lack of a special venue statute expressly applicable to the prosecution of a capital murder. 112 S.W.3d 592, 604 (Tex. Crim. App. 2003). We conclude that Maxwell's reliance on *Murphy* is misplaced. The "aggravated" nature of an aggravated sexual assault charge does not take it out of the purview of Article 13.15. *See Rangel v. State*, 199 S.W.3d 523, 539 (Tex. App.—Fort Worth 2006, pet. dism'd), *improvidently granted*, 250 S.W.3d 96 (Tex. Crim. App. 2008) (applying Article 13.15's special sexual assault venue provision to aggravated sexual assault); *see also Chavez v. State*, 721 S.W.2d 508, 509 (Tex. App.—Houston [14th Dist.] 1986, no pet.) (same).

Article 13.15 specifically states that "[s]exual assault may be prosecuted . . . in the county in which the victim is abducted." Tex. Crim. Proc. Code Ann. art. 13.15. Both indictments in cause numbers CR11-0272 and

CR11-0273 alleged that the abduction occurred in Parker County, and Maxwell concedes this fact. We overrule Maxwell's points three, four, and five.

### C.    Double Jeopardy

In his sixth point, Maxwell argues that his double jeopardy rights have been violated. Specifically, Maxwell argues that "[a]ll indictments alleged the same criminal act, episode and transaction and were tried in a single criminal action." Maxwell contends that "at least" two of his three convictions should be set-aside." We disagree.

The State charged Maxwell with one count of aggravated kidnapping and two counts of aggravated sexual assault by different conduct—one count alleging the knowing penetration of the complainant's sexual organ and another count alleging the knowing penetration of the complainant's anus.

In this case, the aggravated kidnapping indictment charged that the aggravating factor was Maxwell's use of a deadly weapon during his commission of abducting the complainant. The actual commission of the sexual assaults, in the manner in which they were charged, was an element of each aggravated sexual assault charge, but they were not an element of the charged aggravated kidnapping. It is well settled that under these circumstances, the offense of aggravated criminal kidnapping is a distinct criminal offense from aggravated sexual assault for double jeopardy purposes because the State is required to prove an element in each offense that is not an element of the other. *See Billings v. State*, 399 S.W.3d 581, 592 (Tex. App.—Eastland 2013, no pet.)

7

(holding that defendant's convictions for aggravated kidnapping and aggravated sexual assault did not violate double jeopardy because even though abduction was an element of aggravated kidnapping, abduction was not an element of the charged aggravated sexual assault); *see also Gonzales v. State*, 270 S.W.3d 282, 285 (Tex. App.—Amarillo 2008, pet. ref'd) (holding that convictions for both aggravated sexual assault and aggravated kidnapping were not barred by double jeopardy even though one count of indictment referenced sexual assault as an aggravating factor of aggravated kidnapping).

Furthermore, both of the aggravated sexual assault charges alleged different conduct, and thus there would be no double jeopardy violation by the State bringing both distinct aggravated sexual assault charges. *See Gonzalez*, 337 S.W.3d at 482 (holding convictions for two counts of sexual assault based on defendant's act of penetrating the victim's sexual organ with his sexual organ and defendant's act of penetrating the victim's anus with his sexual organ did not violate double jeopardy); *see also Hanson v. State*, 180 S.W.3d 726, 732 (Tex. App.—Waco 2005, no pet.) (holding convictions for two counts of aggravated sexual assault of a child did not violate defendant's right against double jeopardy, where one count alleged that defendant caused victim's penis to contact defendant's mouth and other count alleged that defendant's penis penetrated victim's anus). We overrule Maxwell's sixth point.

8

**D.     Judicial Comments**

In his seventh point, Maxwell argues that the trial court "reversibly erred and abused [its] discretion in commenting upon the weight of the evidence" by telling the complainant, while she testified, that she was "doing a great job" and that she was "doing fine."  Among other arguments, the State alleges that because Maxwell did not object to the trial judge's comments at the time they were made, Maxwell forfeited any potential complaint for our review.  We agree with the State.

During Maxwell's cross-examination of the complainant, the following colloquy took place:

[Defense Counsel]:     What are the names of your half brothers?

[Witness]:     Billy Cotton and Billy Pearson.

[Defense Counsel]:     Okay.  Now, is one –

The Court:  Just a second.  You're doing a great job speaking into the microphone.  But if you don't lean too – if you lean too close, then it has that little echo?

[Witness]:     Okay.

The Court:  So, speak into it but don't –

[Witness]:     I'm just real nervous.

The Court:  That's okay to be nervous.  You're doing a great job.  So, just –

[Witness]:     So, what am I supposed to do?

The Court:  Speak into the microphone like you've been doing, but don't lean all the way that close.

[Witness]: How about I just – well, I'm so nervous, I squirm, you know.

The Court: All right. You're doing fine. Let's proceed.

[Defense Counsel]: Okay. Are either one of your half brothers married?

In order to preserve a complaint for appellate review, a defendant must make a timely, specific objection to the trial court. *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd). Generally, this requirement holds true for improper comments by the trial court. *Id.* Here, Maxwell did not object or complain in any way about the trial court's comments at the time they were made.

Recognizing his lack of objection, and citing *Blue v. State*, Maxwell claims that he was not required to object. 41 S.W.3d 129, 133 (Tex. Crim. App. 2000). The Texas Court of Criminal Appeals recently held that "the *Blue* decision has no precedential value." *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). In *Unkart*, the court reiterated the "traditional and preferred procedure" for preservation of error regarding a trial court's comments. *See id.* ("Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial."). While leaving the door open that a judicial comment can rise to the level of fundamental error and alleviate the need to follow preferred procedure for error preservation, the *Unkart* court made it clear that when an instruction to disregard could cure any residual harm from a judicial comment, an appellant forfeits his complaint for review by failing to object and request an instruction. *Id.*

10

In this case, when reviewing the trial court's comments to the complainant witness in the context in which they were made, the comments appear to be in reference to how the witness was speaking into the microphone and creating an echo by being too close to it.  If Maxwell had objected to the comments and requested an instruction, the trial court could have instructed the jury that his comments were not in relation to the witness's credibility, but rather how the witness was navigating the witness stand and microphone.  But Maxwell did not object, nor did he request an instruction to the jury.  Thus he has forfeited any complaint for our review.  *See id.*  We overrule Maxwell's seventh point.

### E. Entry into Residence to Retrieve Complainant's Purse

In his eighth point, Maxwell argues that "the trial court judge reversibly erred and abused his discretion in overruling [Maxwell's] motion to suppress and objection to the admission of evidence seized from [Maxwell's] residence." Maxwell's complaint is that when the officer escorted the complainant back into Maxwell's residence to retrieve her purse, the officer committed an illegal entry into his home and thus evidence seized from his residence should have been suppressed.  We conclude that Maxwell presents nothing for this court to review.

In deciding whether to address the merits of an appeal from the denial of a motion to suppress, we must first identify the fruits that the trial court declined to suppress.  *Gonzales v. State*, 966 S.W.2d 521, 524 (Tex. Crim. App. 1998); *Miller v. State*, 312 S.W.3d 162, 166 (Tex. App.—Fort Worth 2010, no pet.).  If it is not clear from the testimony and exhibits what the "fruits" are, then we need

11

not address the merits of the claim. *Miller*, 312 S.W.3d at 166. This is so because a motion to suppress is simply a specialized objection to the admissibility of evidence. *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (*citing Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g)). Thus, a party can forfeit error if (1) his suppression motion makes global arguments supported only by constitutional and statutory provisions, and (2) he fails to argue any specified grounds during the hearing on the motion to suppress. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005), *cert. denied*, 549 U.S. 861 (2006).

A corollary to these principles is that when an appellant fails to specify what evidence should have been suppressed, nothing is presented for appellate review. *See Williams v. State*, 937 S.W.2d 479, 488 (Tex. Crim. App. 1996); *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996); *Lawton v. State*, 913 S.W.2d 542, 554 (Tex. Crim. App. 1995), *cert. denied*, 519 U.S. 826 (1996). Another staple of error preservation and whether a reviewing court will address the merits of an appeal is whether in raising the complaint on appeal, the appellant ensures that his complaint is the same as the complaint or objection made during trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App.) (*citing Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)), *cert. denied*, 502 U.S. 870 (1991).

Here, Maxwell's motion to suppress evidence presented to the trial court was a boilerplate motion in general, containing conclusory language. It does not

12

specify what particular evidence he wanted suppressed. Citing federal and State constitutional and statutory provisions, Maxwell alleged in his motion that his arrest was unlawful, that the search of his person was unlawful, and that the search of his house was unlawful except to the degree that if it was lawful, police exceeded the "scope and autho[rity]" of any warrant. He also stated that he wanted "any and all such evidence" derived from these searches and seizures suppressed. Undoubtedly, the trial court could have properly denied the motion for the lack of specificity alone. *See Johnson v. State*, 548 S.W.2d 700, 706 (Tex. Crim. App. 1977) (perceiving no error in the trial court's denial of motion to suppress "[s]ince the appellant fail[ed] to state what evidence, if any, was obtained as a result of the alleged unlawful arrest . . . .").

But at the suppression hearing, and again during trial, Maxwell argued specifically that his audiotaped and videotaped confessions to police should have been suppressed. At the suppression hearing, Maxwell argued that his confessions should have been suppressed because they were taken in violation of his right to terminate the officers' interrogation. During trial, Maxwell argued that his confessions should have been suppressed because of the officer's entry into his residence to accompany the complainant, who wanted to retrieve her purse. The trial court overruled both of these objections.

Now on appeal, Maxwell argues that "prejudicial evidence" or "the evidence obtained" by police during their search of his residence should have been suppressed because it was tainted by the officer's entry into his residence

13

with complainant to retrieve her purse. Maxwell does not identify what evidence the trial court should have suppressed, although he indicates that it is something found in his residence that was not "going anywhere . . . had the officers simply waited for a search warrant."

Maxwell's argument neither identifies what evidence the trial court failed to suppress nor does it comport with the only specific arguments that this court can ascertain he lodged in the court below. *See Johnson*, 548 S.W.2d at 706; *Wilson*, 71 S.W.3d at 349. Thus, we overrule Maxwell's eighth point.

### F. Maxwell's Limited Invocation of Right to Counsel

In part of his ninth point, Maxwell argues that the trial court erred by denying his motion to suppress the audiotaped and videotaped statements he made to police after his arrest. Maxwell argues that he invoked his right to counsel by making statements to the interviewing officer that he "would like an attorney before I can talk to you about that," "I don't want to answer that," and "I'm not going to answer that." Maxwell argues that these statements were "sufficient to terminate the interview" and that these statements constituted an "unequivocal" request for counsel.

The State counters that these statements were limited invocations of counsel, expressing only Maxwell's desire not to discuss third-party involvement with the police without an attorney present and that the police were free to discuss Maxwell's involvement in these crimes to the extent that Maxwell himself prescribed. We agree with the State.

14

As a threshold issue, we note that our review of the audiotaped and videotaped exhibits of Maxwell's statements to police do not reveal the language used by Maxwell in his brief. In his brief, Maxwell states that he said, "I would like an attorney before I can talk to you about that." He also says that he used "words to the effect of 'I don't want to answer that' and 'I'm not going to answer that.'" The State's version of the alleged invocation is that Maxwell said that he "would like an attorney before I talk to [the officer] about that." Rather than cite to the portion in the audiotaped and videotaped interviews where these statements can be found, both parties cite to and rely upon the trial court's statements made at the suppression hearing regarding what the trial court recalled having been said after the trial court examined these exhibits. Maxwell does state in his brief that his alleged invocation occurred "[a] little more than halfway thru the interview process." Our review of these exhibits did uncover this colloquy between Maxwell and the interviewing officer during Maxwell's first audiotaped interview, albeit near the end of the interview:

Officer: "Why are you going to go down without telling us who this, who these people are?"

Maxwell: "Because I want to talk to an attorney before I do that."

Officer: "Before you do that, you want to talk to an attorney?"

Maxwell: "Yes."

An accused may invoke his right to counsel for some purposes without invoking it for all purposes. *See Connecticut v. Barrett*, 479 U.S. 523, 527-28,

107 S. Ct. 828, 831 (1987) (holding that accused who agreed to make an oral statement but refused to make a written statement without an attorney present had only invoked the right to counsel with regard to the written statement); *see also Griffin v. Lynaugh*, 823 F.2d 856, 862 (5th Cir. 1987), *cert. denied*, 484 U.S. 1079 (1988) (recognizing that an unambiguous limited request for counsel is to be construed according to its plain meaning and that police officers are not required to interpret a limited request as an assertion of a general unlimited right to counsel).

Nothing in *Miranda* or its progeny prohibits the police from continuing to question a suspect when the suspect makes a qualified request for counsel, to the extent permitted by the qualification. *Barrett*, 479 U.S. at 523, 107 S. Ct. at 829; *see also Michigan v. Mosley*, 423 U.S. 96, 103–04, 96 S. Ct. 321, 326 (1975) (explaining that the rights afforded by *Miranda* enable a suspect to "control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation"). Thus, statements a suspect seeks to suppress that were made in response to police interrogation are admissible at trial if the suspect's qualified invocation of his right to counsel permitted that interrogation. *See State v. Gobert*, 275 S.W.3d 888, 893 (Tex. Crim. App. 2009) ("[W]hen a suspect makes a clear, but limited, invocation of the right to counsel, the police . . . may question their suspect outside the presence of counsel to the extent that his clearly expressed limitations permit."); *see also Ziegler v. State*, No. 08-09-00188-CR, 2011 WL 810060, at *6 (Tex. App.—El Paso Mar. 9, 2011,

16

no pet.) (op., not designated for publication) ("We conclude that Appellant's limited request for counsel to explain the photo array instructions did not require the detectives to cease the interrogation immediately nor did the request render inadmissible the remainder of the interrogation captured on video.").

Here, when considered in the context in which the statement was made, Maxwell's statement that he wanted to "talk to an attorney before [he did] that" is, as the trial court found, a limited invocation of counsel regarding any potential third-party involvement in Maxwell's abduction of the complainant. And even though he was not required to do so, the officer asked a follow-up question to clarify Maxwell's expressed limitation to the interview. *See Gobert*, 275 S.W.3d at 892. Maxwell does not point this court to any statements that were admitted at trial that violated his qualified "invocation of the right to counsel"; thus, the trial court did not err by not suppressing his other statements. *See id.* at 893. We overrule this portion of Maxwell's ninth point.

## G. Statements of Leniency

In the remainder of his ninth point, Maxwell argues that his confessions were the result of "coercive acts" by the police. Specifically, Maxwell argues that his confession was obtained as the result "of a promise or benefit" by the interviewing officer.

The trial court found that there was "no promise or inducement" offered to Maxwell in return for his statements. The trial court's findings of fact state that during the complained-of portion of one of the interviews, the interviewing officer

17

"told [Maxwell] that 'it would help us answer these questions that we have' and that 'there's things you can do to somewhat minimize what may happen when we get later on in this system.'"

General statements made to a suspect regarding how a confession can sometimes result in leniency do not render a confession involuntary. *Muniz v. State*, 851 S.W.2d 238, 253–54 (Tex. Crim. App.), *cert. denied*, 510 U.S. 837 (1993). And any prediction about future events is not a promise. *See Mason v. State*, 116 S.W.3d 248, 261 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding that an officer's statements that the situation would "go better" for appellant by giving a confession was a prediction about a future event that did not amount to a promise).

In this case, we have reviewed the complained-of statements, and the record supports the trial court's finding that the interviewing officer did not make any promises or offer any benefit to Maxwell in exchange for his statements. Rather, the officer's statements were nothing more than a prediction that Maxwell's cooperation could result in leniency "later on in this system." *See Muniz*, 851 S.W.2d at 254 ("The [interviewing officer's] conversation about leniency fails to rise to the level of a promise."). We overrule the remainder of Maxwell's ninth point.

## H.    Jury Argument and Maxwell's Motion for Mistrial

In his tenth point, Maxwell argues that the trial court abused its discretion by overruling his motion for mistrial after the prosecutor referred to the

18

complainant as "a very credible, credible lady" during closing arguments to the jury at the guilt-innocence phase. Immediately after the statement was made, Maxwell objected. The trial court sustained the objection and on its own accord, instructed the jury to disregard the remark. Maxwell then moved for a mistrial, which the trial court denied.

It is improper for a prosecutor to inject his or her personal opinion about the victim's honesty and truthfulness into closing arguments. *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981). But almost any improper argument may be cured by an instruction to disregard. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App.), *cert. denied*, 516 U.S. 832 (1995). And when the trial court sustains an objection and instructs the jury to disregard but denies a motion for mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.*

The question of whether a mistrial should have been granted when a curative instruction has been given involves most, if not all, of the same considerations that attend a harm analysis. *Id.* Therefore, in cases in which constitutional rights are not implicated, courts employ a three-factored analysis that seeks to evaluate the effect of the harm on the outcome of the trial. *See id.*; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App.), *cert. denied*, 526 U.S. 1070 (1998); *Tucker v. State*, 15 S.W.3d 229, 237–38 (Tex. App.—Houston [14th

19

Dist.] 2000, pet. ref'd). The factors to be considered in determining whether the trial court abused its discretion by denying a mistrial include: (1) the severity of the misconduct (magnitude of the prejudicial effect); (2) the measures adopted to cure the misconduct (efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct. *See Hawkins*, 135 S.W.3d at 77 (applying the three-factor test to improper arguments during the punishment phase); *Mosley*, 983 S.W.2d at 259; *Tucker*, 15 S.W.3d at 237–38 (analyzing the three factors to determine if improper argument during guilt/innocence phase constituted reversal).

We do not conclude that any constitutional rights were impinged upon by the prosecutor's remark in this case, and Maxwell does not contend that constitutional rights are implicated. *See Tucker*, 15 S.W.3d at 237 (holding that trial court's erroneous ruling regarding improper comments made during jury argument involved non-constitutional error); *Ortiz v. State*, 999 S.W.2d 600, 605–06 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that trial court's error in overruling the appellant's repeated objections to arguments outside the record constituted non-constitutional error). We will therefore utilize the *Mosley* factors to determine if a mistrial should have been granted.

With respect to the first factor, we do not find the State's improper argument severe enough to warrant a mistrial or a reversal of Maxwell's convictions. *See Vega v. State*, No. 11-10-00025-CR, 2012 WL 28826, at *3 (Tex. App.—Eastland Jan. 5, 2012, no pet.) (mem. op., not designated for

20

publication) (holding that trial court did not abuse its discretion by denying motion for mistrial after trial court sustained defendant's objection to prosecutor's comments that complainant "was a credible witness" and that "[we're] here because I believe in it" and after trial court instructed jury to disregard comment).

Second, we conclude that the curative measure employed by the trial court in this case to disregard the prosecutor's statement was sufficient to effectively cure any harm. Maxwell does not point to anything in the record leading us to conclude that the jury did not or could not obey the trial court's instruction, and we are to presume that the jury followed the instruction. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (reasoning that a reviewing court generally considers instructions given to the jury to be sufficient to remedy most improprieties that occur during a trial and presumes that a jury will follow the trial court's instructions).

Last, we conclude that Maxwell's convictions were fairly certain, regardless of the prosecutor's remark. The State introduced Maxwell's own confessions to all three of these convictions. It also elicited testimony from the complainant herself describing the gruesome details of her abduction, her transport, and Maxwell's acts of hanging her nude in the air in his garage as he sexually assaulted her. Additionally, the State introduced testimony from arresting officers in which they described the complainant coming out of Maxwell's residence as they questioned him about her whereabouts. And DNA matched both Maxwell

21

and the complainant to sexual devices and instruments of bondage found in Maxwell's residence.

Accordingly, we hold that the trial court did not abuse its discretion by finding that the prosecutor's comment to the jury was not so prejudicial that expenditures of further time and expense would be wasteful, futile, and demanding of a mistrial. *See Hawkins*, 135 S.W.3d at 77. We overrule Maxwell's tenth issue.

## I. Denial of Maxwell's Motion for Continuance

In Maxwell's eleventh point, he argues that the trial court improperly denied his motion for continuance. Trial had previously been scheduled with the jury voir dire to commence on February 8, 2012, and jury trial on February 14, 2012. On February 7, 2012, the day prior to the scheduled voir dire, Maxwell filed a motion for continuance. In the motion, Maxwell contended that he needed additional time to "review the voluminous discovery provided by the State to defense counsel." According to his motion, "[s]uch discovery began to be delivered to defense counsel a few days prior to the pretrial hearing and . . . increased in scope and quantity since that date, including additional witnesses and extraneous offense evidence." The motion further contended that the defense investigator was hospitalized with a heart ailment on January 27, 2012, and did not return to "limited duty" until February 3, 2012.

On February 8, 2012, the trial court held a pretrial hearing to address a number of motions, including Maxwell's motion for continuance. The prosecutor

averred that he had delivered the "bulk of the discovery" to Maxwell on May 31, 2011, and that he delivered an additional "inch thick worth of paperwork" to him on January 27, 2012. The State contended that the additional discovery was primarily "the work notes of the DNA folks that will testify in this case" and that Maxwell had already received the DNA experts' final reports in May. Maxwell agreed with these statements. Maxwell also averred that he could have hired a different investigator when his became ill, but he simply did not. Maxwell did not express how his case would be prejudiced by not being allowed the continuance. He also agreed that the State provided its latest discovery to him more than ten days prior to trial. *See* Tex. Code Crim. Proc. Ann. art. 1.051(e) (West Supp. 2013) ("An appointed counsel is entitled to 10 days to prepare for a proceeding.").

A criminal action may be continued on the written motion of a defendant so long as sufficient cause is fully set forth in the motion. Tex. Code Crim. Proc. Ann. art. 29.03 (West 2006). The trial court's ruling on a motion for continuance is reviewed for an abuse of discretion. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). When reviewing abuse of discretion challenges, a wide degree of deference is given to the trial court. *Id.*

To establish an abuse of discretion in refusing to grant a motion for continuance, the defendant must show that he was actually prejudiced by his counsel's inadequate preparation time. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995). Such specific prejudice may be shown by unfair

23

surprise, an inability to effectively cross-examine the State's witnesses, or the inability to adduce crucial testimony that could have been given by potential witnesses. *Dotson v. State*, 146 S.W.3d 285, 297 (Tex. App.—Fort Worth 2004, pet. ref'd). A mere statement that counsel did not have enough time to prepare an adequate defense does not demonstrate prejudice. *Id.*

In the instant case, although Maxwell alleges that the denial of his requested continuance gave his counsel inadequate time to prepare his defense, he fails to establish any specific prejudice arising from the trial court's denial of his motion. Our review of the record reveals that Maxwell was not unfairly surprised as he alleges. Maxwell was not surprised by the facts of these cases. Maxwell does not contest that the State provided the bulk of discovery to him several months prior to his motion. In addition, Maxwell acknowledged at the hearing that the State's discovery timeline was correct and that the State served its latest discovery, which covered testimony Maxwell admits he was already familiar with and had already been apprised of, at least ten days prior to trial. Furthermore, Maxwell admitted at the hearing that he could have hired a different investigator. At the trial court's hearing on his motion, Maxwell did not provide evidence that he was unable to effectively prepare for trial or how he would have prepared differently had the continuance been granted, nor does he point to such evidence in the record on appeal.

Because Maxwell was unable to show that he was prejudiced by his counsel's allegedly inadequate preparation time, we cannot hold that the trial

24

court abused its discretion by denying his motion for continuance. *See Heiselbetz*, 906 S.W.2d at 512. Accordingly, we overrule Maxwell's eleventh point.

## IV. CONCLUSION

Having sustained Maxwell's first two points and having overruled the remainder of his points, we modify the trial court's judgment in CR11-0273 by deleting the language ordering cumulation of Maxwell's sentences and affirm that judgment as modified, and we affirm the trial court's judgments in CR11-0271 and CR11-0272.

BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DAUPHINOT, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 19, 2013

25